Filed 2/2/26  P. v. Gutierrez CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JESUS GUTIERREZ, JR.,<br><br>        Defendant and Appellant. | A170780<br><br>(Solano County<br>Super. Ct. No. FCR332353) |

Jesus Gutierrez, Jr. (appellant), appeals from the trial court's denial of his Penal Code section 1172.6[1] petition for resentencing following an evidentiary hearing.  We affirm.

PROCEDURAL BACKGROUND

In 2018, following a jury trial, appellant and codefendant Christopher Johnson were found guilty of second degree murder (§ 187, subd. (a)).  The jury found true an allegation that Johnson personally and intentionally discharged a firearm in the commission of the crime (§ 12022.53, subd. (d)).  Appellant was sentenced to a prison term of 15 years to life, and this court

---

[1] All undesignated section references are to the Penal Code.

affirmed the judgment. (*People v. Gutierrez et al.* (Oct. 1, 2021, A159878, A159997) [nonpub. opn.].)

In 2023, appellant filed a petition for resentencing pursuant to section 1172.6. The trial court appointed counsel and found appellant established a prima facie case. At the evidentiary hearing, the prosecution relied on the trial transcript and two trial exhibits.[2] Appellant presented one new witness. The trial court denied appellant's resentencing petition, finding the evidence established beyond a reasonable doubt that appellant was guilty of murder under current law as a direct aider and abettor or, in the alternative, as a major participant in Johnson's criminal conduct acting with reckless indifference to human life.

FACTUAL BACKGROUND

*Trial Testimony*

Samantha F. testified that, on the evening of August 20, 2017, she and her friend Victoria C. went to an acquaintance's house. Johnson was standing outside next to a white picket fence and Victoria joined him. Appellant arrived in a black Impala and parked nearby. Not long thereafter, a gold car drove by slowly, and then left. Johnson said, "Did you see that? It was kind of suspicious," and walked to appellant's car, saying, "Let's go." Johnson and appellant drove away, following the gold car. Samantha heard gunshots and then appellant and Johnson returned. Johnson looked scared and appellant's car was "all shot up."

Jessica F. testified that, on the night of the shooting, she was inside her house, listening through an open window to a young man and young woman she did not know talking in front of her white picket fence. When two men

---

[2] The bench officer presiding over the resentencing petition had also presided over the jury trial.

walked out of a nearby alleyway, Johnson appeared to recognize them, pulled a gun out of his pants, and stood with the gun by his side. After the two men walked away, Johnson put the gun away. Subsequently, a tan Acura drove by, and Johnson got into the passenger seat of a dark car parked nearby, yelling at the driver, "Go get them. Follow them." As the dark car sped away, Jessica saw Johnson with the top half of his body outside the open passenger window, holding a gun in his hand. Jessica heard gunshots and tires screeching, then the dark car returned and Johnson got out, yelling at everyone to get into the house.[3]

Jordan H., a close friend of the victim, Gary Cromwell, Jr., testified under a grant of immunity. On the night of the shooting, he and Cromwell took Cromwell's silver Acura with tinted windows to sell marijuana. Both Jordan and Cromwell had guns with them. After parking, they walked down an alley to meet the buyer, but the buyer never showed up, so they returned to Cromwell's car. As they were leaving the area, a dark car pulled up beside them on the wrong side of the road and Jordan saw someone with their upper body out of the passenger window, pointing a gun at Cromwell's car. Jordan grabbed his gun and started shooting. Cromwell was shot and subsequently died.

Appellant testified in his own defense. At the time of the shooting, he was 18 or 19 years old. That evening, he drove his Chevy Impala to a friend's house, where he saw Johnson standing outside talking to a woman. Appellant had known Johnson since middle school. At some point, a car with tinted windows slowly drove by. The car then sped off, and Johnson got in

_____

[3] Jessica called 911 and a recording of the call was admitted into evidence at trial and was part of the evidentiary record before the resentencing court.

3

appellant's car and told him to follow the car. Appellant did not see anything in Johnson's hands. Johnson did not tell appellant why he wanted to follow the car or give any indication that he knew who was in the car. Appellant caught up with the car and pulled up alongside it, but could not see inside the tinted windows. As he and Johnson were trying to see who was in the car, someone from the car started shooting at them. Appellant ducked and froze, heard close gunshots that sounded like they were coming from his car, and then drove off.

*Expert Testimony*

At the resentencing evidentiary hearing, appellant presented Dr. Francesca Lehman, an expert in adolescent development. Dr. Lehman did not interview appellant but reviewed a psychosocial history prepared by someone else. Dr. Lehman testified that at the time of the shooting, appellant was in the stage of late adolescence, which takes place from age 18 to 21. Individuals in this stage are more likely to make impulsive decisions influenced by peer pressure and without considering long-term consequences.

The psychosocial history reviewed by Dr. Lehman reported that appellant suffered a severe brain injury when he was five weeks old, and that his brother had been shot nine days before Cromwell was shot. Dr. Lehman opined that these factors could contribute to poor decisionmaking.

DISCUSSION

Appellant argues the trial court's findings lack substantial evidence. As explained below, we conclude there is substantial evidence that appellant directly aided and abetted second degree murder by aiding and abetting

4

Johnson's commission of a life-endangering act, to wit, pursuing a car while openly displaying a gun.[4]

"At the [section 1172.6] evidentiary hearing, 'the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.' (§ 1172.6, subd. (d)(3).) Thus, 'it is the [trial] court's responsibility to act as independent fact finder and determine whether the evidence establishes a petitioner would be guilty of murder under amended sections 188 and 189 and is thus ineligible for resentencing under section [1172.6].' " (*People v. Cody* (2023) 92 Cal.App.5th 87, 110 (*Cody*).)

In our review of such a determination, " '[t]he test is not whether the People met their burden of proving beyond a reasonable doubt that [a defendant in a section 1172.6 proceeding] was ineligible for resentencing, but rather "whether *any* rational trier of fact could have" made the same determination, namely that "[t]he record . . . disclose[s] . . . evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find [as did the superior court]." ' [Citation.] [¶] ' "In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the [order] the existence of every fact the [superior court] could reasonably have deduced from the evidence. [Citation.] 'Conflicts [in the evidence] . . . subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge

---

[4] Because of this conclusion, we need not and do not decide whether, as the parties dispute, (1) appellant established a prima facie case for resentencing relief; (2) substantial evidence supports a finding that Johnson pursued the Acura with the intent to kill its occupants and appellant knew of such intent; and/or (3) substantial evidence supports a finding that appellant was a major participant in Johnson's criminal activity and acted with reckless indifference to human life.

. . . to determine the . . . truth or falsity of the facts upon which a determination depends.' " ' " (*Cody*, *supra*, 92 Cal.App.5th at p. 111.)

Following the " 'elimination of natural and probable consequences liability for second degree murder, an aider and abettor who does not expressly intend to aid a killing can still be convicted of second degree murder if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life.' " (*People v. Reyes* (2023) 14 Cal.5th 981, 990.)  " '[D]irect aiding and abetting is based on the combined actus reus of the participants and the aider and abettor's own mens rea. [Citation.]  In the context of implied malice, the actus reus required of the perpetrator is the commission of a life-endangering act.  For the direct aider and abettor, the actus reus includes whatever acts constitute aiding the commission of the life-endangering act.  Thus, to be liable for an implied malice murder, the direct aider and abettor must, by words or conduct, aid the commission of the life-endangering *act*, not the result of that act.  The mens rea, which must be personally harbored by the direct aider and abettor, is knowledge that the perpetrator intended to commit *the act*, intent to aid the perpetrator in the commission of *the act*, knowledge that *the act* is dangerous to human life, and acting in conscious disregard for human life.' " (*Id.* at pp. 990–991.)

Appellant concedes that "pursing the [Acura] while displaying a gun was a life-endangering act because it made gun violence by one side or the other highly likely."  He further concedes that substantial evidence supports the findings that appellant knew Johnson intended to commit this act and intended to aid Johnson in its commission.  However, appellant argues no substantial evidence supports the findings that he knew the act was dangerous to human life and acted in conscious disregard for human life,

6

because his "immaturity made him unable to subjectively appreciate the danger to life of Johnson's conduct." Appellant characterizes Dr. Lehman's testimony as "substantial evidence supporting the inference that appellant felt peer pressure to assist Chris Johnson" and thereby acted without reflecting on the danger of Johnson's conduct. But whether the record contains substantial evidence supporting such an inference is immaterial; the question before us is whether substantial evidence supports the trial court's finding. (*Cody*, *supra*, 92 Cal.App.5th at p. 111.) The trial court expressly considered Dr. Lehman's testimony and found it did not change the outcome: "I'm mindful of the testimony of the doctor, and those are important issues and the Court considered them, but they're not enough for the Court to adopt a different finding." The court was free to make such a finding; Dr. Lehman's testimony did not compel a finding that appellant was unable to understand the danger.

Appellant's argument that Cromwell and Jordan "were the aggressors" by twice approaching Johnson has no bearing on whether appellant knew Johnson's conduct was dangerous to human life and consciously disregarded that danger. We also reject appellant's contention that the trial court relied on evidence not in the record in stating Johnson told appellant "to follow the car and to get [Jordan] and Cromwell." Jessica testified Johnson told appellant to "get them," and further testified that Johnson appeared to recognize the two men who had come out of the alley shortly before the Acura drove by. It is a reasonable inference that, in telling appellant to "get them," Johnson was referring to Jordan and Cromwell. In any event, the matter is immaterial to the issue of whether appellant understood that the conduct of following a car while openly displaying a gun is dangerous to human life.

In sum, substantial evidence supports the trial court's finding that appellant aided and abetted Johnson's second degree murder.

DISPOSITION

The judgment is affirmed.


SIMONS, J.


We concur.

JACKSON, P. J.
CHOU, J.


(A170780)

8